UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

STEEVE MATHIAS PAUL,

                Petitioner,

                -v.-

THOMAS DECKER, *in his official capacity as Director of the New York Field Office of U.S. Immigrations & Customs Enforcement*; CHAD WOLF, *in his official capacity as Acting Secretary, U.S. Department of Homeland Security*, and CARL E. DUBOIS, *in his official capacity as Sheriff of Orange County New York*,

                Respondents.

20 Civ. 2425 (KPF)

**OPINION AND ORDER**

---

KATHERINE POLK FAILLA, District Judge:

    Petitioner Steeve Mathias Paul filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 (the "Petition"), alleging that he suffered unconstitutional conditions of confinement in the course of his detention by U.S. Immigration and Customs Enforcement ("ICE") authorities during the COVID-19 pandemic. As part of this argument, Petitioner alleged severe medical conditions that put him at an increased risk of death or serious harm from COVID-19. After Petitioner initiated this action, Respondents released Petitioner from detention in light of the unique circumstances presented by the COVID-19 pandemic. Now before the Court is Respondents' motion to dismiss the Petition as moot pursuant to Federal Rule of Civil Procedure 12(b)(1). For the reasons detailed below, the Court grants Respondents' motion and dismisses the Petition as moot.

# BACKGROUND[1]

## A. Factual Background

Petitioner is a 31-year-old man with a history of smoking who suffers from multiple underlying medical conditions, including heart palpitations, atrial fibrillation with multiple premature ventricular contractions, and hypertensive blood pressure. (Pet. ¶¶ 5, 54-56). Petitioner is not a United States citizen, but he entered the United States at the age of seven and has resided in the United States since that time. (*Id.* at ¶¶ 5, 16, 51). Between 2016 and 2019, Petitioner was arrested by law enforcement on a number of occasions. (Charles Decl. ¶¶ 5-10).

On September 19, 2019, ICE arrested Petitioner pursuant to an administrative warrant for the purpose of placing him into removal proceedings under 8 U.S.C. § 1182(a)(6)(A)(i), as an alien present without inspection. (Pet. ¶ 52).[2] The same day, ICE determined that Petitioner was subject to discretionary detention under 8 U.S.C. § 1226(a), under which statute ICE could have opted instead to release Petitioner on bond, on his own

---

[1] This Opinion draws on facts alleged in the Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 ("Pet." (Dkt. #1)). The Court also draws jurisdictional facts from the Declaration of Deportation Officer Michael V. Charles ("Charles Decl." (Dkt. #28)), because Respondents are permitted to offer extrinsic evidence showing lack of subject matter jurisdiction on a motion brought under Federal Rule of Civil Procedure 12(b)(1). *See Nicholas* v. *Trump*, 433 F. Supp. 3d 581, 584 n.2 (S.D.N.Y. 2020) (citing *Carter* v. *HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016)).

For ease of reference, the Court refers to the parties' briefing as follows: Respondents' brief in support of the Government's motion to dismiss as "Resp. Br." (Dkt. #27); Petitioner's opposition brief as "Pet. Opp." (Dkt. #29); and Respondents' reply brief as "Resp. Reply" (Dkt. #30).

[2] Petitioner disputes this charge and alleges that he was inspected and admitted when he entered the United States in 1995. (Pet. ¶ 52 n.29).

recognizance, or under other conditions. (Pet. ¶ 59; Charles Decl. ¶ 11). *See also* 8 U.S.C. § 1226(a). Thereafter, Petitioner was detained at the Orange County Jail in Goshen, New York. (Pet. ¶ 52).

On February 27, 2020, during the course of his removal proceedings, an Immigration Judge ("IJ") held a bond hearing, at which Petitioner appeared with counsel. (Charles Decl. ¶ 14). The IJ denied Petitioner's request for a bond because the IJ determined that although some of Petitioner's prior arrests had not resulted in convictions, their recency gave the IJ concern as to Petitioner's danger to the community. (*Id.*).[3]

Petitioner remained detained as the COVID-19 pandemic spread throughout New York in March 2020, with public health officials warning of dangers posed to those in correctional facilities. (*See* Pet. ¶¶ 27-28, 31-35, 52). Upon learning of the potential medical hazards if he were to contract COVID-19, Petitioner filed a request for release on March 12, 2020, which request was renewed on March 16, 2020, after Petitioner was denied treatment for heart pain due to restrictions at the jail entailed by COVID-19. (*Id.* at ¶¶ 62, 65; *see also id.* at ¶¶ 44-47, 49-50, 54-55 (describing impact of COVID-19 on Petitioner's health and conditions of confinement at Orange County Jail in March 2020)). Petitioner asked that ICE exercise either its discretion or parole authority under 8 C.F.R. § 215.5(b) to release him immediately on recognizance, bond, or reasonable conditions of release. (*Id.* at ¶¶ 62, 65). On

---

[3] Respondents state that there is no indication in ICE's records that Petitioner filed an appeal of the IJ's decision, and the Court understands that Petitioner's removal proceedings remain pending. (Charles Decl. ¶ 14).

3

March 19, 2020, Petitioner filed the Petition alleging that the Government's failures to (i) protect him adequately in light of the COVID-19 outbreak and (ii) provide adequate medical care and protection to high-risk detainees like himself violated Petitioner's due process rights. (*Id.* at ¶¶ 85-92). Petitioner requested that the Court, *inter alia*, enjoin Respondents from moving him from the New York City area while habeas proceedings were pending, order Respondents to release him from detention immediately with appropriate conditions, and order Respondents not to re-detain him pending the resolution of removal proceedings against him, including all administrative or judicial appeals. (*Id.* at pp. 25-26).

**B.    Procedural Background**

On March 19, 2020, Petitioner filed a habeas petition pursuant to 28 U.S.C. § 2241 in this Court, challenging his detention at the Orange County Jail. (Dkt. #1). On March 21, 2020, Petitioner filed a motion for a temporary restraining order or preliminary injunction based on serious health concerns related to the COVID-19 pandemic, seeking his immediate release from detention at the Orange County Jail. (Dkt. #5). On the same day, Petitioner also filed an order to show cause. (Dkt. #4). The Court ordered Respondents to show cause by March 27, 2020, including to explain why the Court should not grant the Petition and the related motion for a preliminary injunction. (Dkt. #3).

On March 27, 2020, ICE exercised its discretion and released Petitioner from detention on certain conditions in light of the unique circumstances

presented by the COVID-19 pandemic.  (Charles Decl. ¶ 15).  Respondents now state that "[a]bsent a violation of the conditions of [Petitioner's] release or … a change of circumstances (*e.g.*, issuance of a removal order), ICE will not detain [Petitioner] or impose additional conditions on his release." (*Id.*).  That same day, Respondents filed a letter notifying the Court that Petitioner had been released from detention.  (Dkt. #7).  The letter was later amended to include Petitioner's release paperwork.  (Dkt. #8).

Following several extensions of time for the parties to confer on their positions regarding dismissal of the Petition as moot, on September 17, 2020, the parties submitted a joint letter informing the Court of their inability to reach a resolution in the case, and requesting a conference or the commencement of briefing.  (Dkt. #23).  The next day, the Court set a briefing schedule for Respondents' anticipated motion to dismiss the Petition.  (Dkt. #24).[4]

Respondents filed their motion to dismiss the Petition and supporting papers on October 19, 2020.  (Dkt. #26-28).  Petitioner filed his opposition to the motion to dismiss on November 19, 2020.  (Dkt. #29).  Briefing concluded on December 18, 2020, when Respondents filed their reply in further support of their motion to dismiss.  (Dkt. #30).

---

4      On October 5, 2020, in light of Petitioner's release from detention on or about March 27, 2020, the Court issued an Order denying as moot Petitioner's motions for a temporary restraining order and an order to show cause.  (Dkt. #25).

## DISCUSSION

**A.    Applicable Law**

    **1.    Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(1)**

Respondents move to dismiss the Petition for lack of subject matter jurisdiction, arguing that Petitioner's release from detention has rendered his claims moot. (*See* Resp. Br. 1). A challenge raising the issue of mootness is analyzed under Rule 12(b)(1), since it implicates the Court's subject matter jurisdiction. *See Doyle* v. *Midland Credit Mgmt., Inc.*, 722 F.3d 78, 80 (2d Cir. 2013) ("Under Article III of the U.S. Constitution, '[w]hen a case becomes moot, the federal courts lack subject matter jurisdiction over the action.'" (quoting *Fox* v. *Bd. of Trs. of State Univ. of N.Y.*, 42 F.3d 135, 140 (2d Cir. 1994))). Rule 12(b)(1) permits a party to move to dismiss a complaint for "lack of subject matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "'A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it.'" *Lyons* v. *Litton Loan Servicing LP*, 158 F. Supp. 3d 211, 218 (S.D.N.Y. 2016) (quoting *Makarova* v. *United States*, 201 F.3d 110, 113 (2d Cir. 2000)).

The Second Circuit has drawn a distinction between two types of Rule 12(b)(1) motions challenging subject matter jurisdiction: facial motions and fact-based motions. *Carter* v. *HealthPort Techs., LLC*, 822 F.3d 47, 56-57 (2d Cir. 2016); *see also Katz* v. *Donna Karan Co., LLC*, 872 F.3d 114, 119 (2d Cir. 2017). A facial Rule 12(b)(1) motion is one "based solely on the allegations of the complaint or the complaint and exhibits attached to it." *Carter*, 822 F.3d at

56. When considering a facial challenge, a district court must "determine whether [the complaint and its exhibits] allege[ ] facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue." *Id.* (internal quotation marks omitted) (quoting *Amidax Trading Grp.* v. *S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011) (per curiam)). And to make that determination, a court must accept the complaint's allegations as true "'and draw[ ] all reasonable inferences in favor of the plaintiff.'" *Id.* at 57 (quoting *Lunney* v. *United States*, 319 F.3d 550, 554 (2d Cir. 2003)).

"Alternatively, a defendant is permitted to make a fact-based Rule 12(b)(1) motion, proffering evidence beyond the [complaint and its exhibits]." *Carter*, 822 F.3d at 57. Here, Respondents have provided evidence beyond the Petition in support of their motion to dismiss on mootness grounds. "In opposition to such a motion, plaintiffs must come forward with evidence of their own to controvert that presented by the defendant, or may instead rely on the allegations in the[ir p]leading if the evidence proffered by the defendant is immaterial because it does not contradict plausible allegations that are themselves sufficient to show standing." *Katz*, 872 F.3d at 119 (internal quotation marks omitted) (alteration in *Katz*) (quoting *Carter*, 822 F.3d at 57). If a defendant supports his fact-based Rule 12(b)(1) motion with "material and controverted" "extrinsic evidence," a district court "will need to make findings of fact in aid of its decision" as to subject matter jurisdiction. *Carter*, 822 F.3d at 57.

### 2. Mootness

Federal courts are courts of limited jurisdiction, "'and lack the power to disregard such limits as have been imposed by the Constitution or Congress.'" *Platinum-Montaur Life Scis., LLC* v. *Navidea Biopharmaceuticals, Inc.*, 943 F.3d 613, 616 (2d Cir. 2019) (quoting *Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C.* v. *Dupont*, 565 F.3d 56, 62 (2d Cir. 2009)).  Article III of the Constitution "limits the jurisdiction of federal courts to 'Cases' and 'Controversies,'" thereby "restrict[ing] the authority of federal courts to resolving 'the legal rights of litigants in actual controversies.'"  *Genesis Healthcare Corp.* v. *Symczyk*, 569 U.S. 66, 71 (2013) (internal quotation marks omitted) (quoting *Valley Forge Christian Coll.* v. *Ams. United for Separation of Church & State, Inc.*, 454 U.S. 471 (1982)).  The "Case and Controversy" requirement places the burden on "those who invoke the power of a federal court to demonstrate standing — a 'personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.'"  *Already, LLC* v. *Nike, Inc.*, 568 U.S. 85, 90 (2013) (quoting *Allen* v. *Wright*, 468 U.S. 737, 751 (1984)).

A case ceases being a "Case" or "Controversy" — or, in other words, becomes moot — "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."  *Already, LLC*, 568 U.S. at 91 (internal quotation marks omitted) (quoting *Murphy* v. *Hunt*, 455 U.S. 478, 481 (1982) (per curiam)).  This is the case "n[o] matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the

lawsuit." *Id.* However, "[a]s long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Chafin* v. *Chafin*, 568 U.S. 165, 172 (2013) (internal quotation marks omitted) (quoting *Knox* v. *Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307-08 (2012)). "The party seeking to have the case dismissed bears the burden of demonstrating mootness[,] and that burden is a heavy one." *Chen-Oster* v. *Goldman, Sachs & Co.*, 251 F. Supp. 3d 579, 590 (S.D.N.Y. 2017) (alteration omitted) (quoting *Robinson* v. *Blank*, No. 11 Civ. 2480 (PAC) (DF), 2013 WL 2156040, at *13 (S.D.N.Y. May 20, 2013)).

**B.    Analysis**

Respondents argue that the Court lacks subject matter jurisdiction because a habeas petition challenging the lawfulness of a petitioner's detention is rendered moot once the petitioner has been released. (Resp. Br. 4-6). Petitioner does not dispute that his release addresses his allegations, but contends that his Petition is not moot because Respondents retain discretion to re-detain him at any time, thereby re-subjecting Petitioner to the unlawful conditions that he challenges in the Petition. (Pet. Opp. 3-7). Specifically, Petitioner argues that (i) Respondents' voluntary release of Petitioner does not moot this case under the voluntary cessation doctrine because the allegedly wrongful behavior could reasonably be expected to recur (*id.* at 7-11), and (ii) the "capable of repetition, yet evading review" doctrine applies as an exception to mootness because, in the event of his re-detention, the conditions created by the COVID-19 pandemic that he challenges are reasonably expected

9

to remain (*id.* at 11-13). For the reasons discussed below, the Court agrees with Respondents and dismisses the case as moot.

1. **The Voluntary Cessation Doctrine Does Not Apply**

A party's "voluntary cessation of allegedly illegal activities will usually render a case moot if the [respondent] can demonstrate that [i] there is no reasonable expectation that the alleged violation will recur and [ii] interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Mhany Mgmt., Inc.* v. *County of Nassau*, 819 F.3d 581, 603 (2d Cir. 2016) (quoting *Granite State Outdoor Advert., Inc.* v. *Town of Orange*, 303 F.3d 450, 451 (2d Cir. 2002)). A party "claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc.* v. *Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000). However, the party seeking dismissal "do[es] not need to prove that the challenged conduct could not possibly recur; they need only make clear that there is no 'reasonable expectation' of recurrence." *Manbeck* v. *Colvin*, No. 15 Civ. 2132 (VB), 2016 WL 29631, at *4 (S.D.N.Y. Jan. 4, 2016) (quoting *Lamar Advert. of Penn, LLC* v. *Town of Orchard Park*, 356 F.3d 365, 375 (2d Cir. 2004) (internal quotation marks omitted)).

The parties' briefing centers on a dispute over the scope of ICE's discretion to re-detain Petitioner and the impact of any such discretion on the voluntary cessation doctrine. Significantly, however, Petitioner does not argue that detention is itself unconstitutional, but rather that the specific conditions

10

of confinement to which he was subjected as a result of the COVID-19 pandemic are unconstitutional. (Pet. ¶¶ 85-92). As a result, the operative question is not whether ICE retains absolute discretion to re-detain Petitioner. Instead, the Court asks whether the purportedly unconstitutional conditions described in the Petition will persist in the event that Petitioner is re-detained. On this record, the Court cannot conclude that those same specific conditions will still exist if and when Petitioner were to be re-detained.

Petitioner seeks to prevent Respondents from subjecting him to confinement in fact-specific conditions that place him "at imminent and irreparable risk of significant health complications and even death should he be exposed to COVID-19 in ICE detention." (Pet. Opp. 4). In *Basank* v. *Decker*, ten people detained by ICE filed a habeas petition requesting release from ICE custody because of the public health crisis posed by COVID-19. — F. Supp. 3d —, No. 20 Civ. 2518 (AT), 2020 WL 1953847, at *1 (S.D.N.Y. Apr. 23, 2020). Prior to the court's issuance of a temporary restraining order, ICE voluntarily released five of the petitioners. *Id.* at *3. On a motion to convert the temporary restraining order into a preliminary injunction, the court declined to exercise jurisdiction as to those five petitioners' claims on mootness grounds, explaining that while it was "possible that Respondents might seek to rearrest the five Petitioners who were voluntarily released, Petitioners have not demonstrated a 'reasonable expectation' that they would be subject to rearrest while the dangerous conditions in ICE detention facilities persist." *Id.* Further, "if

11

Respondents did seek to detain them before the threat of infection had passed, a renewed habeas petition would doubtless be successful." *Id.*

The instant case is analogous to *Basank*, in that Respondents have demonstrated that there is no "reasonable expectation" that the same dangerous conditions described in the Petition would persist at ICE detention facilities if Petitioner were re-detained. Although the Petition provides details on the dangerous COVID-19-related conditions at New York-area ICE facilities (*see* Pet. ¶¶ 31-50), nearly fourteen months have since passed, and the state of the COVID-19 pandemic has changed substantially. Respondents correctly note that the conditions of confinement at Orange County Jail and other ICE detention facilities in the New York area have continued to evolve (and, indeed, improve) as more information about COVID-19 becomes available. (Resp. Reply 5). Without more, the Court cannot find a reasonable expectation that Petitioner will be subject to the same conditions again, even if re-detained in the near future. *Accord Smith* v. *New Haven Sup. Ct.*, No. 20 Civ. 744 (KAD), 2020 WL 4284565, at *4 (D. Conn. July 27, 2020) (dismissing petitioner's COVID-19-related conditions of confinement claims as moot where petitioner, who sought pretrial release, had since been transferred to another facility); *cf. Razzoli* v. *Strada*, No. 10 Civ. 4802 (CBA), 2013 WL 837277, at *2 (E.D.N.Y. Mar. 6, 2013) ("A § 2241 challenge to conditions of confinement will be considered moot where the petitioner has been transferred to a different facility[.]" (citing *Thompson* v. *Choinski*, 525 F.3d 205, 209 (2d Cir. 2008))).

The parties hotly contest whether ICE retains unfettered discretion to re-detain Petitioner after his release, and the impact of any such discretion on the instant motion to dismiss.[5] If the alleged wrongdoing were premised on re-detention itself, further scrutiny of ICE's declaration may be warranted. However, as discussed above, the alleged wrongdoing relates to the conditions under which Petitioner was confined. Given the extensive and fast-moving developments related to the COVID-19 pandemic, and the attendant changes in the conditions of confinement at various facilities across the county, the Court

---

[5] Respondents contend that there is no reasonable expectation that the alleged violation will recur because ICE has declared that "[a]bsent a violation of the conditions of [Petitioner's] release or ... a change of circumstances (*e.g.*, issuance of a removal order), ICE will not detain [Petitioner] or impose additional conditions on his release." (Charles Decl. ¶ 15; *see also* Resp. Br. 6-9; Resp. Reply 3-6). Notwithstanding ICE's sworn declaration, Petitioner argues that Respondents' "refusal to bind themselves to any concrete limitation on their discretion to re-detain Petitioner demonstrates that it is far from 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" (Pet. Opp. 10 (quoting *Friends of the Earth, Inc.* v. *Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000))). Essentially, Petitioner argues that a "change of circumstances" is sufficiently vague so as to provide Respondents with unfettered discretion to re-detain Petitioner at any time and for any reason. (Pet. Opp. 1, 10).

Respondents' declaration states that the issuance of a removal order is an example of the type of "changed circumstances" that may cause Petitioner's re-detention. (*See* Resp. Br. 2). Nevertheless, what "changed circumstances" means in the context of ICE's discretion to re-detain Petitioner remains unclear. Some courts have found that similar declarations render a case moot under the voluntary cessation doctrine. *See Doe* v. *Barr*, No. 19 Civ. 1544 (ALC), 2020 WL 5659510, at *3-4 (S.D.N.Y. Sept. 22, 2020) (dismissing petitioner's argument that ICE retained unreviewable discretion for re-detention after releasing petitioner when ICE made a similar declaration, but without analyzing "change in circumstances" language). Other courts have required more concrete assurances before finding a petition moot. *See Leybinsky* v. *U.S. Immigr. & Customs Enf't*, 553 F. App'x 108, 109 (2d Cir. 2014) (summary order) (finding petition moot after the Government voluntarily released petitioner where re-detention was only possible if petitioner violated terms of supervised release); *Farez-Espinoza* v. *Napolitano*, No. 08 Civ. 11060 (HB), 2009 WL 1118098, at *4 (S.D.N.Y. Apr. 27, 2009) ("[D]efendants have been found to satisfy their burden by, for example, submitting a sworn affidavit disavowing any intent to ever repeat the challenged conduct."). As noted herein, because Petitioner is not reasonably likely to be subjected to the same conditions of confinement even if he is re-detained, the Court need not determine whether Respondents' declaration sufficiently cabins ICE's discretion so as to render this case moot.

determines that there is no reasonable expectation that Petitioner will be subject to the same conditions described in the Petition.[6] Therefore, because Petitioner has been released from custody and has not shown that he is suffering an actual injury, nor that there exists "a 'reasonable expectation' that he will be subjected to the same [conditions] again," *Basank*, 2020 WL 1953847 at *3 (quoting *Leybinsky* v. *U.S. Immigr. & Customs Enf't*, 553 F. App'x 108, 109 (2d Cir. 2014) (summary order)), the Court holds that Respondents' voluntary cessation of the conduct challenged in the Petition has rendered the Petition moot.

### 2. The "Capable of Repetition, Yet Evading Review" Exception Does Not Apply

"A narrow exception to the principle that a moot claim is to be dismissed, ... is that the court may adjudicate a claim that, though technically moot, is 'capable of repetition, yet evading review[.]'" *Altman* v. *Bedford Cent. Sch. Dist.*, 245 F.3d 49, 71 (2d Cir. 2001) (quoting *City of Los Angeles* v. *Lyons*,

---

[6] Although the Court dismisses the Petition as moot, it does not mean to suggest that Petitioner's underlying claims are without merit. Petitioner here specifically alleged that Respondents failed to protect him adequately from the COVID-19 outbreak, including by failing to provide him with adequate medical care. (Pet. ¶¶ 85-92). As discussed above, nearly fourteen months have passed since the Petition was filed. Therefore, the analysis of any constitutional challenge to the conditions of confinement related to the failure to keep detainees safe from COVID-19 will necessarily be different than at the beginning of the pandemic. *Accord Basank* v. *Decker*, — F. Supp. 3d —, No. 20 Civ. 2518 (AT), 2020 WL 1953847, at *3 (S.D.N.Y. Apr. 23, 2020) (dismissing as moot habeas petition where petitioners were voluntarily released, but explaining that a renewed habeas petition would "doubtless be successful" if the Government sought to re-detain petitioners before the threat of COVID-19 had passed); *cf. Fernandez-Rodriguez* v. *Licon-Vitale*, 470 F. Supp. 3d 323, 349-55 (S.D.N.Y. 2020) (denying a preliminary injunction motion alleging unconstitutional COVID-19-related conditions of confinement because, as of July 2020, inmates had failed to establish deliberate indifference to the risks to their health, but noting that injunctive relief may be pursued in the future if prison facility fell short in its efforts to improve its pandemic response as pandemic continued).

14

461 U.S. 95, 109 (1983)); *see also Dean* v. *Blumenthal*, 577 F.3d 60, 65 (2d Cir. 2009). This exception "applies only in exceptional situations, where two circumstances are simultaneously present: [i] the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and [ii] there [is] a reasonable expectation that the same complaining party would be subjected to the same action again." *Lillbask ex rel. Mauclaire* v. *Conn. Dep't of Educ.*, 397 F.3d 77, 85 (2d Cir. 2005) (internal citation and quotation marks omitted) (quoting *Spencer* v. *Kemna*, 523 U.S. 1, 17 (1998)). While Respondents bear the burden of establishing that their voluntary cessation moots the case, Petitioner must show his claims are capable of repetition, yet evade review. *See Video Tutorial Servs.* v. *MCI Telecomms. Corp.*, 79 F.3d 3, 6 (2d Cir. 1996).

Petitioner argues that there is a reasonable expectation that he will be subjected to the same conditions of confinement again, particularly because the conditions he challenges exist at all four ICE facilities in the New York City area. (Pet. Opp. 12). Respondents counter that this assertion is "mere speculation," and thus Petitioner cannot satisfy the second prong of the capable-of-repetition test. (Resp. Reply 6). The Court rejects Petitioner's argument for essentially the same reasons as discussed above with respect to voluntary cessation — namely, the Court's conclusion that the conditions of confinement are reasonably likely to be substantively different were Petitioner ever to be re-detained, ensuring that Petitioner cannot satisfy the second element of the capable-of-repetition test.

15

The Court believes that Judge Woods's analysis of a similar issue, albeit in the ripeness context, is instructive. In *Gonzalez-Reyes* v. *Decker*, the petitioner filed a habeas petition pursuant to 28 U.S.C. § 2241 seeking release from ICE custody due to health risks posed to him by the COVID-19 pandemic, and thereafter the Government voluntarily released the petitioner from custody. No. 20 Civ. 2639 (GHW), 2020 WL 7869549, at *1 (S.D.N.Y. Dec. 31, 2020). The petitioner then filed an amended habeas petition, seeking a court order that "there is no way that he can be constitutionally detained as long as COVID-19 is at large in the land." *Id.* The Government sought to dismiss the amended petition on mootness and ripeness grounds. *Id.* Judge Woods explained how a petition asking to the court to evaluate COVID-19 conditions of detention at an indeterminate time in the future, in an unspecified facility, was an impermissible speculative inquiry "about the hypothetical conditions of some hypothetical future detention." *Id.* at *8. While Judge Woods dismissed the petition on ripeness grounds, this Court would be forced to engage in the same speculative evaluation if it were to ask whether Petitioner would be subjected to the same conditions again at some unknown point in the future and in some unspecified facility. *See id.* at *12 ("Ultimately, [the petitioner's] claims regarding the constitutional deficiency of potential future detention are speculative — based on uncertain events and conditions that may never come to pass. As a result, this matter no longer presents a case or controversy

16

justiciable under Article III.").⁷  Furthermore, conditions in immigration detention have changed since the pandemic's outbreak in early 2020, leading a number of courts in this District to reject claims regarding the conditions of confinement at these facilities based on the practices and precautions now taken by ICE, as well as the now-tangible prospect of widespread vaccination rollouts.  *See id.* at *10 (collecting cases rejecting claims regarding the conditions of confinement at ICE facilities based on the practices and precautions now taken); *see also Roman* v. *Decker*, No. 20 Civ. 3752 (JGK), 2020 WL 4273823, at *6 (S.D.N.Y. July 24, 2020) (dismissing habeas petition alleging due process violations occasioned by detention during COVID-19 pandemic, even though petitioner may be in high-risk category according to CDC guidelines, due to "the precautions that the [Orange County Jail] has taken to prevent the petitioner from contracting that infection and the demonstrated results of those precautions thus far"); *United States* v. *Batista*, No. 19 Cr. 2 (JFK), 2020 WL 3249233, at *4 (S.D.N.Y. June 16, 2020) (noting that the Orange County Jail has enacted "strict quarantine and isolation protocols; restrictions on inmate transfers and visitations; ... and heightened screening procedures").

---

⁷  Judge Woods recognized that the respondents also raised strong arguments that the petitioner's release from immigration detention mooted the action.  *See Gonzalez-Reyes* v. *Decker*, No. 20 Civ. 2639 (GHW), 2020 WL 7869549, at *8 n.3 (S.D.N.Y. Dec. 31, 2020).  However, Judge Woods declined to decide whether the case was moot because the petitioner's claims regarding the constitutionality of future conditions of detention were clearly not ripe.  *Id.*

17

Thus, given the changes in conditions of confinement with respect to the COVID-19 pandemic, the Court cannot find that there is reasonable expectation that Petitioner would be subject to the same COVID-19-related conditions of confinement in the event of his re-detention. Therefore, the "capable of repetition, yet evading review" doctrine does not apply as an exception to mootness here.

## CONCLUSION

For the reasons set forth in this Opinion, Respondents' motion to dismiss is GRANTED. The Court dismisses this action as moot, although Petitioner would of course be able to file a second petition for habeas relief if he were re-detained in the future under comparable conditions. The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated: May 14, 2021
New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge